# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01332-COA

JONES FAMILY MEDICINE CLINIC PLLC,                      APPELLANTS
BAY SPRINGS MEDICAL CLINIC PLLC, JFMC
THE Q LLC, JFMC ELLISVILLE LLC, JFMC
HEIDELBERG LLC, AND JFMC
TAYLORSVILLE LLC

v.

AMANDA LANDRUM McCALLUM                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2024 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | TERRY L. CAVES RISHER GRANTHAM CAVES |
| ATTORNEYS FOR APPELLEE: | KATHRYN RUSSELL GILCHRIST ELIZABETH ERIN HYDE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 07/28/2026 |
| MOTION FOR REHEARING FILED: | |

EN BANC.

WEDDLE, J., FOR THE COURT:

¶1. On June 11, 2018, Amanda McCallum entered into an employment contract with Dr. Matthew Jones on behalf of Jones Family Medical Clinic PLLC (JFMC) and his five satellite clinics.[1] On July 2, 2019, JFMC filed a complaint against McCallum in the County Court of Jones County, Mississippi, for breach of contract. On October 21, 2019, McCallum filed her

---

[1] These clinics are Bay Springs Medical Clinic PLLC, JFMC the Q LLC, JFMC Ellisville LLC, JFMC Heidelberg LLC, and JFMC Taylorsville LLC.

answer, defenses, and counterclaim. On June 29, 2023, McCallum filed a motion for summary judgment requesting the court to dismiss the complaint based on procedural and substantive unconscionability of the contract. On August 31, 2023, the county court entered its final judgment granting the motion for summary judgment against JFMC and finding that the contract was both procedurally and substantively unconscionable.

¶2. JFMC then appealed to the Jones County Circuit Court, which affirmed the decision of the county court. On appeal before this Court, JFMC argues that the county court erred by (1) failing to find McCallum waived her affirmative defense of unconscionability, (2) not finding that McCallum consented to and ratified the terms of the employment agreement, and (3) finding that the employment agreement was procedurally and substantively unconscionable.

## FACTS AND PROCEDURAL HISTORY

¶3. During her first year with JFMC, McCallum claims that she became concerned Dr. Jones was violating numerous rules, regulations, and laws that would jeopardize her nursing license. Dr. Jones claims that McCallum lied about her credentials with insurance companies, and, due to her "deceitfulness," she could not generate income for JFMC, which cost JFMC about $14,711.54 to re-certify her with insurance companies. On June 28, 2019, McCallum ended her employment with JFMC.

¶4. On July 2, 2019, JFMC filed a breach-of-contract lawsuit against McCallum, seeking a preliminary and permanent injunction to prohibit McCallum from violating a covenant not

to compete. JFMC also alleged that McCallum terminated her employment contract, JFMC suffered damages, entitling them to $10,000 in liquidated damages to "reimburse JFMC for its investment in training and assisting [McCallum] to enter the career field." On October 21, 2019, McCallum filed her answer and counterclaim, raising thirteen affirmative defenses, but she did not raise the affirmative defense of unconscionability. She alleged the following: breach of contract, breach of implied covenant of good faith and fair dealing, civil malicious prosecution, intentional infliction of emotional distress, defamation and slander, conversion, the clinics ordering her to commit illegal actions in her employment, and violations of Fair Labor Standards Act. The parties actively participated in the litigation process (i.e., taking depositions, serving subpoenas, engaging in written discovery, and attending hearings on motions). On December 1, 2020, JFMC filed an amended complaint, and McCallum filed her answer to the amended complaint on January 29, 2021, asserting unconscionability as an affirmative defense.

¶5. On June 29, 2023, McCallum filed a motion for summary judgment, claiming that the employment agreement was procedurally and substantively unconscionable and should not be enforced. After hearing oral arguments, the county court entered its final judgment granting McCallum's motion for summary judgment on August 31, 2023. The county court found that there were "no genuine issues of material fact and that the [c]ontract between plaintiffs and defendant is both procedurally and substantively unconscionable and therefore unenforceable." On September 13, 2023, JFMC appealed to the Circuit Court of Jones

3

County. The circuit court entered an order affirming the county court's decision, ruling that McCallum's employment contract was "made and . . . permeated with unconscionable provisions."[2] Aggrieved, JFMC now appeals.

## DISCUSSION

¶6. Our standard of review for a trial court's grant or denial of a summary judgment motion is de novo. *Byram Café Grp. LLC v. Tucker*, 344 So. 3d 844, 846 (¶10) (Miss. 2022). A trial court's granting of a summary judgment motion is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" *Id.* (quoting M.R.C.P. 56(c)). "While the evidence is viewed in the light most favorable to the nonmoving party, there must be a material fact issue to preclude summary judgment." *Id.* "If any triable issues of material fact exist, the trial court's decision to grant summary judgment will be reversed." *Todd v. First Baptist Church of W. Point*, 993 So. 2d 827, 829 (¶9) (Miss. 2008). We review a trial court's determination that a party did or did not waive an affirmative defense for abuse of discretion. *Cook v. Taylor*, 324 So. 3d 333, 337 (¶18) (Miss. Ct. App. 2021).

¶7. Our Supreme Court has held that a defendant will waive an affirmative defense if he fails to "timely and reasonably raise and pursue the enforcement of any affirmative defense

---

[2] This Court "reviews the [rulings] of the county court without any deference to the analysis of the circuit court." *Robinson v. Singh*, 303 So. 3d 65, 71 (¶21) (Miss. Ct. App. 2020).

or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process." *Id*. at 338 (¶22) (citing *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006)). In *Horton*, the Supreme Court also held that "absent extreme and unusual circumstances," an eight-month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law. *Horton*, 926 So. 2d at 181 (¶45).

¶8.    In the case before us, McCallum did not assert the affirmative defense of unconscionability until January 29, 2021, which was roughly fifteen months after she filed her answer to JFMC's initial complaint on October 21, 2019. The record reflects that McCallum actively participated in the litigation process by making various motions, noticing depositions, propounding and responding to discovery requests, and participating in hearings.[3] Additionally, McCallum waited until June 29, 2023, forty-four months between her initial answer and her motion for summary judgment, to request that the trial court dismiss JFMC's complaint based on procedural and substantive unconscionability. *See Horton*, 926 So. 2d at 180 (¶44). The dissent suggests that JFMC's discovery delays justify McCallum's delayed challenge of unconscionability; however, unconscionability is measured at the time the agreement is executed. *See Sanderson v. Sanderson*, 170 So. 3d 430, 437 (¶22)

---

[3] McCallum even admitted in her responsive pleading that the employment agreement was a binding agreement.

(Miss. 2014) ("[S]ubstantive unconscionability feasibly could be measured at the time the prenuptial agreement is made; measuring it at the time the agreement is made would maintain consistency in the law. It also would ensure that the Court does not relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated."). Therefore, we find that the county court erred by granting McCallum's motion for summary judgment based on the waived affirmative defense of unconscionability. *See Murphy v. William Carey Univ.*, 382 So. 3d 1181, 1188 (¶21) (Miss. Ct. App. 2024) (reversing the grant of summary judgment and finding the affirmative defense was waived for failure to timely raise it while actively participating in the litigation process).

**CONCLUSION**

¶9.     For the foregoing reasons, we reverse the circuit court's order affirming the county court's judgment and remand to the county court for a trial on the merits.

¶10.    **REVERSED AND REMANDED.**

**CARLTON AND WILSON, P.JJ., McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND McDONALD, J.; WESTBROOKS, J., JOINS IN PART.**

**LAWRENCE, J., DISSENTING:**

¶11.    The majority finds that the county court erred by granting McCallum's motion for summary judgment on unconscionability because McCallum has waived this defense by failing to timely pursue it.  Maj. Op. at ¶8.  I disagree with the majority's determination of

6

waiver and would affirm the circuit court's order affirming the county court's grant of summary judgment.

¶12. The subject litigation began on July 2, 2019, when Jones Family Medicine Clinic PLLC (JFMC) filed suit against Amanda McCallum. McCallum filed her original answer on October 21, 2019. On December 1, 2020, JFMC filed an amended complaint. In response to the amended complaint, McCallum filed an amended answer on January 29, 2021, where she raised a defense of unconscionability for the first time. Nearly thirty months later, on June 29, 2023, McCallum filed her motion for summary judgment based on unconscionability.

¶13. The supreme court in *MS Credit Center Inc. v. Horton*, stated that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will *ordinarily* serve as a waiver." *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006) (emphasis added). The court in *Horton* refused "to set a minimum number of days which will constitute unreasonable delay in every case, but rather we defer such findings for the trial court on a case by case basis." *Id.* at 181 (¶45). The court went further to hold that "absent extreme and unusual circumstances[,] an eight month unjustified delay in the assertion and pursuit of any affirmative defense . . . constitutes waiver as a matter of law." *Id.*

¶14. By granting summary judgment, the county court found that McCallum had not

7

*created* an unreasonable delay so as to waive the affirmative defense of unconscionability.[4] Whether there had been an unreasonable delay was a decision that was within the discretion of the county court. *Radco Fishing & Rental Tools Inc. v. Com. Res. Inc.*, 407 So. 3d 167, 181 (¶33) (Miss. 2025). While this Court reviews the grant or denial of summary judgment de novo, the county court's decision on whether there was unnecessary delay that constituted waiver requires deference. *Pruit ex rel. Brooks v. Sargent*, 349 So. 3d 729, 731 (¶4) (Miss. 2022) ("A trial court's determination of whether an affirmative defense has been waived is reviewed for abuse of discretion." (citing *Est. of Puckett v. Clement*, 238 So. 3d 1139, 1144 (¶9) (Miss. 2018)). Abuse of discretion is "[a]n appellate court's standard for reviewing a decision that it asserted to be grossly unsound, unreasonable, illegal or unsupported by the evidence." *Leasy v. SW Gaming LLC*, 335 So. 3d 555, 557-58 (¶7) (Miss. 2022) (internal quotation marks omitted) (quoting *Nunnery v. Nunnery*, 195 So. 3d 747, 752 (¶13) (Miss. 2016)). "In a review for abuse of discretion, the appellate court will consider whether the decision was one of those several reasonable ones which could have been made[,]" and we only reverse if this Court "comes to a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id.* (internal quotation marks omitted). I do not believe that this Court can come to

---

[4] The county court did not make a bench ruling at the summary judgment hearing and only entered a short written order granting summary judgment. However, there is no requirement for the county court to spell out the entire legal reasoning, and there are no magic words that the county court was required to use to justify the disposition.

a "definite and firm conviction that the court below committed a clear error of judgment," as the record supports the conclusion the county court reached. *Id.*

¶15. At the hearing on the motion for summary judgment, JFMC argued that McCallum's argument was waived for being raised 44 months after the original answer and 30 months after the amended answer to the amended complaint. McCallum presented the county court with her reasoning for the delay in bringing her motion at the hearing on the record.

¶16. First, McCallum noted that there was no deadline for filing the summary judgment motion. The Rules of Civil Procedure offer no deadline, and the court had no scheduling order setting a deadline for motions to be filed. As noted by the supreme court, it is the failure to "timely and reasonably raise *and pursue* the enforcement of any affirmative defense" that would create a waiver. *Horton*, 926 So. 2d at 180 (¶44). For example, in *Radco*, the Mississippi Supreme Court reaffirmed the raise and pursue requirements of *Horton*, and found that the affirmative defenses in that case were waived after twenty-one and a quarter months because, in part, there was no evidence in the record that the defenses had been pursued in discovery. *Radco*, 407 So. 3d at 178, 181 (¶¶20, 31). Here, the record showed the reason for the time between raising the defense and pursuing the defense in a motion for summary judgment was due to COVID-19 and discovery violations by JFMC.

¶17. McCallum pointed out that she had to file multiple motions to compel to force JFMC to provide any discovery, which created great delay. Additionally, McCallum had noticed a deposition for Dr. Jones "three or maybe four times." The "delay" that the majority finds

9

to have occurred was caused by JFMC, not McCallum. Instead, McCallum had to seek enforcement of her discovery requests three times through motions to compel. The majority also contends that discovery was not necessary; however, management and necessity of discovery, similar to waiver of affirmative defenses, was a discretionary issue for the county court. *Banks v. Hill*, 978 So. 2d 663, 665 (¶6) (Miss. 2008) ("A trial court is granted wide discretion in managing discovery and issuing scheduling orders, and an abuse-of-discretion standard of review applies to such orders." (citing *Bowie v. Monfort Mem'l Hosp.*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003))); *see Indemnity Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 147 (¶12) (Miss. 2012) (stating that rulings on requests under Rule 56(f) for time to conduct additional discovery are reviewed for abuse of discretion (citing *Stallworth v. Sanford*, 921 So. 2d 340, 342-43 (¶9) (Miss. 2006))). The record supports the county court's decision.

¶18.    Motions to compel discovery responses were filed on May 10, 2021, August 11, 2021, and February 21, 2023. Two of McCallum's motions to compel were timely granted on June 22, 2021, and August 31, 2021, respectively, and the third was rendered moot by the grant of summary judgment. Between January 2021 and June 2023, McCallum filed three motions to compel discovery, filed five deposition requests (two for Dr. Jones), and had multiple hearings on the motions to compel. During this time, not one motion to compel was filed against McCallum.

¶19.    The record clearly supports that McCallum was actively pursuing evidence to support

10

her claims and JFMC was dilatory in responding to discovery and deposition requests and had to be ordered by the court to respond to that which the rules already required. The need for discovery is an acceptable justification for reasonable delay in pursuing affirmative defenses. *See Hinton v. Sportsman's Guide Inc.*, 285 So. 3d 142, 150-51 (¶¶18, 20) (Miss. 2019) (affirming a trial court's determination that a three-and-a-half year delay was not unreasonable, in part, because there were multiple amended complaints, interlocutory appeals, and discovery was necessary to develop the defense); *Doe v. Rankin Cnty. Sch. Dist.*, 189 So. 3d 616, 620 (¶14) (Miss. 2015) (finding that the affirmative defense of immunity had not been waived after over a year of participation in discovery by the parties because the case necessitated discovery); *Murphy v. William Carey Univ.*, 382 So. 3d 1181, 1187 (¶17) (Miss. Ct. App. 2024) ("Such a lengthy delay [of six years] amounts to a waiver absent some reasonable justification—*for example, a need for discovery to establish the defense*—or some other 'extreme and unusual circumstances." (quoting *Horton*, 926 So. 2d at 181 (¶45))).

¶20. Also at the summary judgment hearing, McCallum argued that in the 44 months since the original answer, "24 of those months, we were locked down" due to COVID-19. This Court cannot turn a blind eye to the impact of COVID-19.[5] "The COVID-19 pandemic caused unforeseen delays and complications within the judicial system." *Tisdale v. S. Cent.*

---

[5] Mississippi Code Annotated section 11-71-3(a) (Supp. 2020) defines "COVID-19" as "the novel coronavirus identified as SARS-CoV-2, the disease, health condition or threat caused by the novel coronavirus SARS-CoV-2, or a virus mutating therefrom, and conditions associated with the disease."

*Reg'l Med. Ctr.*, 411 So. 3d 227, 240 (¶47) (Miss. Ct. App. 2024) (Lawrence, J., dissenting). On many occasions members of this Court have expressed acknowledgment and leniency for delays caused by the global health crisis that was ravaging our country. *Id.*; *Martinez v. State*, 386 So. 3d 394, 403 (¶12) (Miss. Ct. App. 2024) ("Also, the resulting delay from the COVID-19 pandemic is not weighed against either party." (citing Emergency Administrative Order–2, In re Emergency Order Related to Coronavirus (COVID-19), No. 2020-AD-00001-SCT (Miss. Mar. 15, 2020))); *Eason v. S. Cent. Reg'l Med. Ctr.*, 411 So. 3d 208, 223 (¶12) (Miss. Ct. App. 2024) (Lawrence, J., dissenting); *Patterson v. Miss. Dep't of Emp. Sec.*, 348 So. 3d 1022, 1027 (¶15) (Miss. Ct. App. 2022) (Westbrooks, J., concurring) ("It is undisputed that COVID-19 brought forth a global crisis and, more specifically, charged Mississippians into a state of emergency."). The supreme court issued "twenty-seven" emergency administrative orders (EAO) due to COVID-19, "with the last EAO being issued on January 27, 2022." *Scott v. UnitedHealthcare of Miss. Inc.*, 374 So. 3d 1270, 1273 (¶5) (Miss. Ct. App. 2023).

¶21. *Horton* was written in 2006, so there is no way the Court could have contemplated the global pandemic at the time. However, I would find that COVID-19 along with a continuous, laborious, and time-consuming discovery dispute was the epitome of what the Court meant by "extreme and unusual circumstances" that would justify a delay in "pursuit of any affirmative defense." *Horton*, 926 So. 2d at 180-81 (¶44) ("[A]bsent extreme and unusual circumstances[,] an eighth month unjustified delay in the assertion and pursuit of any

affirmative defense . . . constitutes waiver as a matter of law."). Further, it was within the county court's discretion to determine whether the delay was "unjustified" and the circumstances surrounding the pandemic certainly support its finding that the defense was not waived. The impact of the pandemic, as argued by McCallum as a reason for any delay, bolsters this dissent's finding that the majority of this Court cannot arrive at a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon *weighing of relevant factors*." *Leasy*, 335 So. 3d at 557-58 (¶7) (internal quotation marks omitted) (quoting *Nunnery*, 195 So. 3d at 752 (¶13)).

¶22.    The majority seemingly penalizes McCallum for failing to raise the defense in her original answer and, instead, raising it in an amended answer. Maj. Op. at ¶8. McCallum's amended answer raising the affirmative defense of unconscionability was responsive to JFMC's amended complaint. Under *Horton*'s raise and pursue rule, the clock began when the amended answer was filed. *Horton*, 926 So. 2d at 181 (¶45) (finding that the defendants had delayed pursuing their affirmative defense from the date of the filing of an "**amended answer** on July 7, 2003," and a motion to compel arbitration on March 22, 2004 (emphasis added)). The Court in *Horton* clearly counts the time of delay from the time of the filing of the amended answer to the time of the assertion of the defense in a motion. *Id.* Here, blaming McCallum for a "forty-four month" delay is somewhat unfair. Instead, the delay was thirty months—the time between McCallum's amended answer and her motion. The time between the amended answer and the time of filing of the motion for summary judgment

13

was delayed due to the COVID-19 pandemic issues and JFMC's refusal to answer discovery.

¶23. I find that there is substantial evidence to support the county court's finding and use of discretion that there was not an unreasonable delay such that McCallum's defense of unconscionability was not waived. The record supports McCallum's arguments, and the county court did not abuse its discretion by deciding the defense had not been waived. Between the time of her amended answer on January 29, 2021, and the motion for summary judgment in June 2023, there were multiple motions to compel discovery and notices of depositions, and the world was suffering under the "virulent COVID-19 pandemic." *Ward v. State*, 346 So. 3d 868, 871 (¶9) (Miss. 2022). Those circumstances certainly tend to support the decision of the county court not finding a waiver of the affirmative defense.

¶24. I would affirm the county court's grant of summary judgment in favor of McCallum. I think the reversal of the grant of summary judgment causes more confusion to lawyers and trial judges in trying to determine whether someone has waived an affirmative defense that was clearly pled in his answer because he did not timely "pursue" it. I recently wrote that the Mississippi Rules of Civil Procedure were not "meant to bring such confusion" that is created by the majority's "harsh interpretation" of *Horton*'s "pursue" language. *Murphy*, 382 So. 3d at 1190 (¶28) (Lawrence, J., concurring). Under the majority's logic, a party to litigation can delay entering proper discovery responses and delay setting depositions, yet now be allowed to assert that another party did not timely pursue his affirmative defense when the delay was caused by his own actions. That turns the Mississippi Rules of Civil Procedure on its head.

14

The rules required responses to discovery. The court had to order JFMC to respond after motions to compel. Yet JFMC asserts McCallum delayed in pursuing an affirmative defense due in part to delays caused by JFMC. There is nothing in this record to suggest the county court abused its discretion, and we are not to substitute our discretion for the trial court. *Leasy*, 335 So. 3d at 557-58 (¶7).

¶25. I am concerned that our appellate court's subjective assessment of the "pursue" requirements in *Horton* continues to muddy the water of an area of law that has become a "legal minefield" for attorneys to navigate. *Id.* Here, the affirmative defense of unconscionability was properly pled after an amended complaint was filed. Between COVID-19 and discovery disputes caused by JFMC's refusal to respond to discovery, the affirmative defense was pursued in a motion for summary judgment. I would not characterize such a scenario as a *Horton* waiver, and therefore I respectfully dissent.

**BARNES, C.J., AND McDONALD, J., JOIN THIS OPINION. WESTBROOKS, J., JOINS THIS OPINION IN PART.**